# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEREMIAS SILVA,

      Plaintiff,

vs.                                                                  No. CIV 98-0579 JC/KBM  (ACE)

AMERICAN FEDERATION OF STATE, COUNTY
AND MUNICIPAL EMPLOYEES, a national labor union,
LUIS ARELLANO and EVELINA MARQUEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Plaintiff's Motion for Pre-Judgment Interest, filed June 25, 1999 *(Doc. 88)*, Plaintiff's Motion for Costs, filed June 30, 1999 *(Doc. No. 91)*, and Defendant AFSCME's Motion for Judgment as a Matter of Law or, in the Alternative, an Order Granting a New Trial and Vacating the Punitive Damage Award or, in the Alternative, a Remittitur of the Punitive Damage Award, filed July 8, 1999 *(Doc. 96)*.  The Court has reviewed the motions, the memoranda submitted by the parties, and the relevant authorities.  The Court finds that Plaintiff's Motion for Pre-Judgment Interest is not well taken and will be denied.  The Court further finds that Plaintiff's Motion for Costs is well taken and will be granted.  The Court further finds that Defendant AFSCME's motion is not well taken and will be denied.

## I.      Background

This case went to trial on July 14, 15 and 16, 1999.  Plaintiff was formerly a union organizer for Defendant American Federation of State, County, and Municipal Employees ("AFSCME").

Plaintiff sued AFSCME on claims that the union failed to make reasonable accommodations for his physical conditions, in violation of the Americans with Disabilities Act ("ADA"), and discharged him for contacting law enforcement officers about incidents occurring at the union.

Plaintiff's ADA claim was dismissed at the close of Plaintiff's case, however, Plaintiff's state law retaliatory discharge claim went to the jury. The jury awarded $624,940 in compensatory damages and $1,000,000 in punitive damages. Plaintiff now moves for pre-judgment interest and costs. AFSCME counters with a renewed motion for judgment as a matter of law or, alternatively, a new trial. AFSCME also seeks an order vacating or remitting the jury's $1,000,000 punitive damage award.

## II.   <u>Analysis</u>

I will initially address AFSCME's post-trial motions and then take up Plaintiff's motions for costs and pre-judgment interest. At the out-set, AFSCME first moves for judgment as a matter of law on Plaintiff's retaliatory discharge claim. AFSCME contends Plaintiff failed to establish "any of the proof predicates for a retaliatory discharge case." AFSCME's Brief at 6. AFSCME argues that Plaintiff did not establish a causal connection between Plaintiff's engagement in protected activity and the challenged discharge. AFSCME also argues that Plaintiff failed to produce evidence demonstrating the union had knowledge of Plaintiff's protected activity.

Under Federal Rule of Civil Procedure 50, judgment as a matter of law may be entered against a party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party." When evaluating a Rule 50 motion, the Court is to view the evidence and all possible inferences in the light most favorable to the nonmoving party. *Vining v. Enterprise Fin. Group, Inc.*,

148 F.3d 1206, 1213 (10th Cir. 1998). Judgment should only be granted if "the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Id.*

In this case, there is ample evidence supporting the jury's verdict. New Mexico's retaliatory discharge action has developed as a common law exception to the employment at-will doctrine. Retaliatory discharge claims prevent employers from discharging employees "because they performed acts that public policy has authorized or would encourage, or because they refused to do something required by an employer that public policy would condemn." *Garrity v. Overland Sheepskin Co. of Taos*, 121 N.M. 710, 714 (1996). For a retaliation claim to succeed, the employer does not have to have actual knowledge that the employee engaged in the protected activity. *Weidler v. Big J Enters., Inc.*, 124 N.M. 591, 599 (Ct. App. 1997). "A discharge based on a belief or suspicion of protected activity is [deemed] just as reprehensible as a discharge based on actual knowledge of protected activity." *Id.*

At trial, the evidence showed that Mr. Moya, Mr. Kupfer and Plaintiff went to state and federal authorities to report certain alleged illegalities occurring at the union. Tr. 113-15; 181-82; 199; 292-93. The evidence also indicated the reporting occurred shortly after the individuals reported their concerns internally and that AFSCME--including Mr. Booth, Mr. Dempsey, Mr. Arellano and Ms. Marquez--knew that Plaintiff (and Mr. Moya and Mr. Kupfer) would contact, or had contacted, law enforcement officials about the alleged activities. Tr. 294 ("And I told [Ms. Marquez], is it because I talked to Paul Booth and Jack Dempsey and then we went to law enforcement?"); Tr. 199 ("we discussed the fact that I had gone and talked to the state police and that the others had gone and that -- and that [Mr. Arellano] was aware of it."); Tr. 198 ("Mr. Silva had repeatedly told them . . .");

Tr. 384 ("[Mr. Booth and Mr. Dempsey] told me -- I think it was -- the words were, it's your prerogative to do whatever you want.").

Also presented at trial was testimony that Plaintiff was forced to travel to Maryland on the heels of an extended trip to California, just after his discussions with law enforcement officials. The evidence also indicated AFSCME's Washington state job offer may not have been made in good faith; the offer was given on short notice, with full knowledge that Plaintiff had extreme difficulty traveling, when other less travel-intensive positions were available. Based on AFSCME's knowledge, the activities that occurred shortly after Plaintiff's reporting, the retaliatory statements of Ms. Marquez, and the proximity of Plaintiff's discharge to his reporting, a reasonable jury could conclude that Plaintiff was discharged for engaging in protected activity; in other words, a reasonable jury could conclude that AFSCME's proffered reasons for Plaintiff's discharge were pretextual.[1] For this reason, AFSCME's Motion for Judgment as a Matter of Law will be denied, as will AFSCME's Motion for a New Trial based on the argument that "the jury's verdict was clearly contrary to the weight of the evidence." AFSCME's Brief at 15. Based on the aforementioned evidence, the jury's verdict is well within reason and does not appear to be the product of sympathy, passion or prejudice.

Turning to my exclusion of Mr. Dempsey's testimony at trial, under Federal Rule of Civil Procedure 16(f), I have power to impose sanctions when a party or a party's attorney fails to participate in the pre-trial phases of a case in "good faith." This discretion includes the exclusion of witnesses and evidence at trial. *See* FED. R. CIV. P. 37(b)(2)(B). Following AFSCME's questionable filing of a renewed Motion for Summary Judgment on the eve of trial, I became very skeptical of

---

[1] The jury may also have considered Mr. Moya's transfer to Puerto Rico to be part of a retaliatory-type atmosphere at AFSCME.

AFSCME's pre-trial tactics. *See* Mem. Op. and Order, filed June 10, 1999 *(Doc. 78)*. After carefully reviewing the Pre-trial Order, I noticed that Defendants had also failed to properly identify the witnesses they anticipated calling.[2] *See* Pre-trial Order, filed April 8, 1999 *(Doc. 38)* ("Indicate if the witness will testify in person . . . and include a brief description of the anticipated testimony.") ("A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.").

On May 4, 1999, Defendants submitted their witness list with twenty-one potential witnesses. *(Doc. 46)*. At trial, I found that this disclosure was too late and far too broad to allow Plaintiff to adequately prepare for trial. Based on this finding, I limited AFSCME to four potential witnesses, to include Mr. Arellano and Ms. Marquez. I specifically excluded AFSCME's general counsel, Mr. Dempsey.

AFSCME now moves for a new trial based on my exclusion of Mr. Dempsey's testimony. AFSCME highlights that I also precluded Mr. Dempsey from offering impeachment testimony on the alleged assurances he made to Mr. Silva, Mr. Kupfer and Mr. Moya, as well as Plaintiff's purported right to continue with the health insurance benefits he had while working for the union. *See* Tr. 589. AFSCME also argues that Mr. Dempsey would have testified about the thoroughness of AFSCME's internal investigation surrounding Plaintiff's allegations. *See* AFSCME's Brief at 19. As I found at trial, the exclusion of Mr. Dempsey's testimony was a proper sanction for AFSCME's failure to disclose their trial witnesses. *See* Tr. 600. Both Mr. Booth (who was in Switzerland during the trial) and Mr. Frank (who testified at the trial), could have, and in the case of Mr. Frank did, testify as to

---

[2] AFSCME admits that this was an unsatisfactory identification. *See* AFSCME Brief at 17.

the matters Mr. Dempsey was going to address.[3]   Mr. Frank testified that Mr. Booth and

Mr. Dempsey conducted an internal investigation and that following the investigation Mr. Booth and

Mr. Dempsey ordered no negative action against Plaintiff.   *See* Tr. 456-57.   Consequently,

Mr. Dempsey's testimony would have been cumulative.

I also find that the impeachment testimony Mr. Dempsey was going to give regarding the

non-retaliation assurances he made to Plaintiff, and the possibility for Plaintiff to continue on medical

coverage, was collateral to the main thrust of Plaintiff's testimony.   I also firmly believe, and believed

at trial, that Mr. Dempsey's impeachment testimony was merely an attempt to sidestep the sanction

I imposed.   Thus, my ruling to exclude Mr. Dempsey--even for impeachment--was proper.[4]

Having denied AFSCME's motion for a new trial based on the exclusion of Mr. Dempsey's

testimony, I turn to AFSCME's motion to vacate or reduce the jury's punitive damage award.

AFSCME argues that the punitive damages awarded were improper because Plaintiff did not request

such damages in his Complaint or in the Pre-trial Order.   AFSCME also contends their conduct was

not reprehensible, making the $1,000,000 in punitive damages excessive.

Under New Mexico law, "punitive damages are allowable in all retaliatory discharge cases."

*Rhein v. ADT Automotive, Inc.*, 122 N.M. 646, 654 (1996).   Retaliatory discharge is an intentional

tort and punitive damages are authorized to deter employers from discharging employees who engage

in protected activity.   *Id.*   In this case, Plaintiff's punitive damage instruction was given in accordance

with the dictates of *Rhein*.   I find that the punitive damages awarded by the jury were not excessive

---

[3] The summaries included in Defendants' tardy witness list indicate Mr. Frank, Mr. Booth and Mr. Dempsey were all going to testify to the same thing.

[4] Even if my ruling to exclude Mr. Dempsey's impeachment testimony was erroneous, his exclusion was harmless to AFSCME's case.

and were not based on passion, prejudice or sympathy. The jury reasonably concluded that AFSCME's actions warranted a $1,000,000 punitive damage award.[5] I also find that punitive damage claims in retaliatory discharge cases do not have to be pled specifically in the Complaint. In this case, the punitive damage award was "just and proper." Complaint at 5.

Finally, turning to Plaintiff's Motions for Pre-Judgment Interest and Costs, I find that an award of prejudgment interest would overcompensate Plaintiff and would be too difficult to compute. Based on Plaintiff's economist's testimony, it appears that a significant portion of Plaintiff's compensatory award was discounted back to the date Plaintiff was discharged. *See* Tr. 238. Consequently, Plaintiff's Motion for Pre-Judgment Interest will be denied.

As to Plaintiff's costs, I will award costs in the amount of $2,159.87. This amount includes the cost of Luis Arellano and Evelina Marquez' depositions.[6] This award does not include the witness fees associated with Doctors Gamez and Martinez, but does include Mr. Moya's airfare.

Wherefore,

IT IS HEREBY ORDERED that Plaintiff's Motion for Pre-Judgment Interest, filed June 25, 1999 *(Doc. 88)* is **denied**;

IT IS FURTHER ORDERED that Plaintiff's Motion for Costs, filed June 30, 1999 *(Doc. 91)*, is **granted**. Defendant AFSCME shall pay Plaintiff $2,159.87 in costs.

IT IS FINALLY ORDERED that Defendant AFSCME's Motion for Judgment as a Matter of Law or, in the Alternative, an Order Granting a New Trial and Vacating the Punitive Damage

---

[5] Quite possibly, a New Mexico jury also took offense at AFSCME's counsel squatting down and pointing his finger at them during closing argument.

[6] Mr. Arellano and Ms. Marquez were significant figures in Plaintiff's retaliatory discharge case, even though they did not take the stand.

Award or, in the Alternative, a Remittitur of the Punitive Damage Award, filed July 8, 1999

*(Doc. 96),* is **denied**.

DATED this 10th day of August, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:    Daniel M. Faber
Robert L. Pidcock
Albuquerque, New Mexico

Counsel for AFSCME:    W. Gary Kohlman
Bredhoff & Kaiser, PLLC
Washington, D.C.

Jerry Todd Wertheim
Jones, Snead, Wertheim,
 Wentworth & Jaramillo
Santa Fe, New Mexico